IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

IFETA MALCINOVIC,

        Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.

No. C14-2068

RULING ON JUDICIAL REVIEW

---

## TABLE OF CONTENTS

I.     **INTRODUCTION** ............................................ 2

II.    **PRINCIPLES OF REVIEW** ................................. 2

III.   **FACTS** ................................................... 4
     A.   *Malcinovic's Education and Employment Background* .......... 4
     B.   *Administrative Hearing Testimony* ......................... 4
          *1.*   *Malcinovic's Testimony* ........................ 4
          *2.*   *Vocational Expert's Testimony* ................... 6
     C.   *Malcinovic's Medical History* ............................ 6

IV.   **CONCLUSIONS OF LAW** ................................. 10
     A.   *ALJ's Disability Determination* .......................... 10
     B.   *Objections Raised By Claimant* ......................... 12
          *1.*   *Credibility Determination* ..................... 12
          *2.*   *Dr. Delbridge's and Dr. Bogdanic's Opinions* .......... 15
          *3.*   *Hypothetical Question* ....................... 21
     C.   *Reversal or Remand* ................................ 22

V.    **CONCLUSION** ......................................... 22

VI.   **ORDER** ............................................... 23

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Ifeta Malcinovic on October 10, 2014, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title II disability insurance benefits.[1] Malcinovic asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits. In the alternative, Malcinovic requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014) (quoting *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006)). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2011)).

---

[1] On November 7, 2014, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Draper v. Colvin*, 779 F.3d 556, 559 (8th Cir. 2015) ("'If substantial evidence supports the Commissioner's conclusions, th[e] court does not reverse even if it would reach a different conclusion, or merely because substantial

3

evidence also supports the contrary outcome.' *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)."); *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

## III. FACTS

### A. Malcinovic's Education and Employment Background

Malcinovic was born in 1969. She completed the eighth grade in school in Bosnia. Her primary language is Bosnian, but she can speak and read "a little" English. Her past relevant work in the United States consists of being a meat packager at Tyson Foods.

### B. Administrative Hearing Testimony

### 1. Malcinovic's Testimony

At the administrative hearing, Malcinovic explained that she was injured while working at Tyson Foods. She stated that she believes she is disabled due to back pain and depression. Malcinovic's attorney inquired about her functional abilities:

> Q: . . . And does the [back] pain limit your ability to stand?
> A: Yes.
> Q: How long can you stand and what happens after you stand that long?
> A: I could stand for 15 or 20 minutes. After that, my whole body is just like ready to collapse. Then I have to sit or sometimes even lay down.
> Q: And what about sitting? How long can you sit at one time and what happens after you do that?
> A: Same, 15, 20 minutes. And after that the pain [is] kicking in and I have to stand up and try to walk around a little bit.
> Q: And how long do you have to walk around or stand?
> A: Ten, fifteen minutes or so.

Q: Okay. And how far can you walk and what happens after you walk that far?

A: Well, I become tired easily. My legs start, become numb, and I become nervous really easily.

Q: Okay. Do you have problems with bending or kneeling and what problems do you have?

A: Yes, when I try to bend over, I just can't bend over.

Q: Okay. And what about kneeling?

A: It's really painful.

Q: And do you have problems with lifting things and how much can you lift?

A: Well, . . . since I was injured, I tried to lift a box and that's when I fell and since then, I never lift anything, because I don't want to experience that same pain ever again, and I'm not lifting anything since then.

(Administrative Record at 39-40.) Malcinovic further testified that her back pain is always present, and is "really bad, bad pain." According to Malcinovic, her back pain radiates both down her left leg, and up to her neck. In describing the pain, she stated "I, I just want to sit and cry."[2] She further stated that medications offer her some pain relief, but the medications also make her drowsy and tired. As a result of her pain, Malcinovic indicated that she gets depressed, has anxiety, and often wants to cry. When asked why she is unable to work, Malcinovic testified "[b]ecause of my back pain, and I'm taking this medication, and I don't want to re-injure and really this pain.[3] Lastly, Malcinovic stated "I swear I'm telling you the truth and I would love to go and get the job. I don't want to be here, honestly. I just want to get better and I want to get the job."[4]

---

[2] Administrative Record at 41.

[3] *Id*. at 44.

[4] *Id*. at 41.

## 2. Vocational Expert's Testimony

At the hearing, the ALJ provided the vocational expert with a hypothetical for an individual who is:

> able to engage in sedentary work[.] . . . Our hypothetical person should need to never climb ladders, ropes or scaffolds, and should need no more than occasionally to climb ramps or stairs, stoop, kneel, crouch, or crawl. Our hypothetical individual should also avoid concentrated exposure to extremes of heat or cold, and avoid concentrated exposure to wetness or humidity and avoid all exposure to unprotected heights and moving mechanical parts or hazardous machinery.

(Administrative Record at 47.) The vocational expert testified that under such limitations, Malcinovic could not perform her past relevant work, but could perform the following jobs: (1) stuffer, (2) polisher, and (3) inspector.

## C. Malcinovic's Medical History

On August 9, 2010, Malcinovic met with Dr. Arnold E. Delbridge, M.D., complaining of back pain. Dr. Delbridge reviewed Malcinovic's back pain history:

> She was injured initially at Tyson's in November 2008. She fell down in 2008 and was injured. She got better from that and went back to work. She was off for 3-4 weeks that time and then she got better. Then on 4-26-10 she was lifting boxes and felt pain in her lower back. It went down her left leg. She has not worked for 3 months or so at Tyson's.

(Administrative Record at 214.) Dr. Delbridge also reviewed an MRI of Malcinovic's back and found that she had a concentric disc bulge at L4-5 and a posterior annular tear. She also had bilateral neural foraminal stenosis at L4-5. Dr. Delbridge arranged for a myelogram and CT scan of Malcinovic's lumbar spine. On August 23, 2010, Malcinovic underwent the CT scan. Dr. Driss Cammoun, M.D., interpreted the scan and found: (1) a mild disc bulge at L4-5, with no herniation or neural foraminal stenosis; and (2) a circumferential disc bulge, with central disc protrusion and mild encroachment of the ventral thecal sac at L5-S1. She returned to Dr. Delbridge on September 2, 2010, with

pain in her leg and foot due to the central disc protrusion at L5-S1. She had an epidural injection as treatment.

On November 22, 2010, Malcinovic returned to Dr. Delbridge for a follow-up appointment. Upon examination, Dr. Delbridge noted that:

> [Malcinovic] can stand up one hour before she starts having pain. Then her back hurts, the[n] her legs become weak and she feels dizzy. She has a disc that impinges in her lower back.

(Administrative Record at 209.) Dr. Delbridge opined that "[c]hances of surgically helping her are considerably under 100%."[5] Malcinovic returned to Dr. Delbridge on April 11, 2011. Dr. Delbridge noted that:

> [Malcinovic] has problems with her back. . . . She had a lumbar myelogram. No root compression. Lateral stenosis at L5-S1. She is better than when she got the injections in her back. . . . She has not been able to work since then. . . . She is exercising at home. She has trouble with standing for long periods of time. It is something that is difficult if not impossible for her to do.

(Administrative Record at 204.) Dr. Delbridge excused Malcinovic from work for six more weeks.

Malcinovic met with Dr. Delbridge again on May 13, 2011. Dr. Delbridge noted a loss of flexion and loss of side-to-side bending by about 50 percent. Dr. Delbridge further noted that "she leans to the left, she has pain in her leg. She has definite loss of motion in her spine."[6] Dr. Delbridge concluded that "[i]t is primarily her spine that prevents her from working."[7] On June 23, 2011, Dr. Delbridge continued to find that Malcinovic had a loss of flexion and side-to-side bending. Dr. Delbridge also found that

---

[5] Administrative Record at 209.

[6] *Id.* at 203.

[7] *Id.*

"[s]he can stand in one spot for about 2 hours. She has trouble lifting boxes. She had about 50 range of motion before and that is about what she has today."[8]

On August 1, 2011, Dr. Delbridge provided a letter outlining Malcinovic's functional limitations. Dr. Delbridge determined that:

> Malcinovic can stand in one spot for only 2 hours at a time. After two hours she would need a break of walking around or sitting for approximately 10 minutes. She should not repetitively lift more than 10 lbs and should not lift from below kneel level or above shoulder level. Because of her limitations of motion of her spine, she cannot twist her spine repetitively when placing objects from right to left or left to right.

(Administrative Record at 241.) Dr. Delbridge also noted that "surgical intervention would, in all probability, not result in enough improvement for her to return to work and she has made a decision not to pursue that route."[9] Dr. Delbridge concluded that Malcinovic has an eight percent whole body impairment.

On February 9, 2012, Malcinovic met with Dr. Vinko M. Bogdanic, M.D., complaining of severe back pain. Dr. Bogdanic noted that Malcinovic had a history of low back pain. Dr. Bogdanic indicated that "[t]he severity of this condition with respect to limitations on activities is severe."[10] Dr. Bogdanic also noted that an associated symptom with her back pain was pain radiating into her legs. Dr. Bogdanic further found that her pain was "poorly controlled" with medication. Upon examination, Dr. Bogdanic diagnosed Malcinovic with lumbago back pain.

On May 9, 2013, Malcinovic returned to Dr. Bogdanic regarding her back pain. Dr. Bogdanic noted that Malcinovic's back condition was "stable," but found that her back

---

[8] *Id.* at 202.

[9] Administrative Record at 241.

[10] *Id.* at 236.

pain affected her neck and upper back, radiated down both of her legs, and was most severe in her low back. Prolonged standing, 3-4 minutes at a time, caused significant pain. Dr. Bogdanic noted that Malcinovic was "unable to t[ie] her shoes, since that particular bending position brings severe shocks of pain."[11]   Dr. Bogdanic also opined that sitting is "somewhat uncomfortable" for Malcinovic. Dr. Bogdanic diagnosed Malcinovic with back pain and anxiety.

On October 22, 2013, Malcinovic met with Dr. Farid F. Manshadi, M.D., for back pain. Dr. Manshadi reviewed Malcinovic's medical history:

> [Malcinovic] reports constant low back pain across her lower back which goes down to her left leg. She also experiences numbness and tingling along her left lateral toes. She has had epidural injections . . . as well as physical therapy to no avail. She also notices weakness in her left leg at times. The pain also goes from her low back into her left intrascapular region. She has issues with her activities of daily living. For example, at times her son needs to put her shoes on for her or she uses slip-on shoes. Also she doesn't do anything for chores around the house and her son and daughter do all the chores including cooking.

(Administrative Record at 312.) Malcinovic rated her pain between 6 and 8 on a scale of 1 to 10, with 10 being the worst pain. She also has difficulty sleeping, and reported prolonged sitting, standing, walking, bending, stooping, or reaching causes increased pain. Upon examination, Dr. Manshadi diagnosed Malcinovic with chronic low back pain with left lower extremity radicular symptoms, left SI joint dysfunction, and lumbar disc disease. Dr. Manshadi recommended that she avoid reaching and twisting activities.

---

[11] *Id.* at 303.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Malcinovic is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014); *Young v. Astrue*, 702 F.3d 489, 490-91 (8th Cir. 2013). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014) (citing *King v. Astrue*, 564 F.3d 978, 979 n. 2 (8th Cir. 2009)); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the

> claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012) (quoting *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Malcinovic had not engaged in substantial gainful activity since May 5, 2010. At the second step, the ALJ concluded from the medical evidence that Malcinovic had the following severe impairments: degenerative disc disease with pain. At the third step, the ALJ found that Malcinovic did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Malcinovic's RFC as follows:

> [Malcinovic] has the residual functional capacity to perform sedentary work . . . except she should need to never climb

ladders, ropes, or scaffolds. In addition, she should need no more than occasionally to climb ramps or stairs, stoop, kneel, crouch, or crawl. She should also avoid concentrated exposure to extremes of heat or cold, and avoid concentrated exposure to wetness and humidity. Further, she should avoid all exposure to unprotected heights, and hazardous machinery, that an individual would have difficulty moving away from quickly in an emergent situation. Moreover, she would need a sit/stand option at ten-minute intervals, however, she would need to remain on task as well as remain at her workstation.

(Administrative Record at 16.) Also at the fourth step, the ALJ determined that Malcinovic could not perform her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Malcinovic could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Malcinovic was not disabled.

### B. Objections Raised By Claimant

Malcinovic argues that the ALJ erred in three respects. First, Malcinovic argues that the ALJ failed to properly evaluate her subjective allegations of pain and disability. Second, Malcinovic argues that the ALJ failed to properly consider the opinions of her treating physicians, Dr. Delbridge and Dr. Bogdanic. Lastly, Malcinovic argues that the ALJ provided a flawed hypothetical question to the vocational expert at the administrative hearing.

### 1. Credibility Determination

Malcinovic argues that the ALJ failed to properly evaluate her subjective allegations of pain and disability. Malcinovic maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Malcinovic's testimony, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's

prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ

when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In his decision, the ALJ generally determined that:

> After careful consideration of the evidence, the undersigned finds that [Malcinovic's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Malcinovic's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible for the reasons explained in this decision.

(Administrative Record at 18.) The ALJ further stated that:

> Although [Malcinovic] described disabling symptoms as a result of her medical impairments, the record is not consistent with that conclusion. As stated above, the objective medical evidence simply does not support [her] subjective level of pain.

(Administrative Record at 19.)

In his decision, the ALJ sets forth the law for making a credibility determination under the Social Security Regulations.[12] The ALJ failed to apply the law, however, in determining the credibility of Malcinovic's testimony and subjective allegations. Specifically, the Court finds that the ALJ's decision lacks the required detail for discrediting a claimant and explaining the inconsistencies between the claimant's subjective allegations and the record as a whole. *See Renstrom*, 680 F.3d at 1066; *Ford*, 518 F.3d at 982; *see also Pelkey*, 433 F.3d at 578 (the ALJ must give reasons for discrediting a claimant). The ALJ offers nothing in terms of the *Polaski* factors and how those factors

---

[12] *See* Administrative Record at 18-19.

relate to Malcinovic's subjective testimony and credibility. The ALJ simply states that Malcinovic's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."[13] The ALJ's decision provides no reasons for discounting Malcinovic's testimony other than a single generic statement that her allegations of pain are not supported by medical evidnce. *See Pelkey*, 433 F.3d at 578 (the ALJ must give reasons for discrediting a claimant). The ALJ fails to address any specific medical evidence that he finds does not support Malcinovic's allegations of pain. Because the ALJ's decision lacks any discussion of the reasons for discrediting Malcinovic, except that her allegations are not entirely credible, and lacks full consideration of *Polaski* or any of the *Polaski* factors, the Court finds that remand is appropriate for the ALJ to further develop the record with regard to Malcinovic's credibility. On remand, the ALJ shall set forth in detail his reasons for finding Malcinovic's subjective allegations to be credible or not credible. If on remand, the ALJ finds Malcinovic's testimony not to be credible, the ALJ shall fully explain the reasons for his credibility determination and fully explain the inconsistencies between Malcinovic's subjective allegations and the evidence in the record.

### 2. *Dr. Delbridge's and Dr. Bogdanic's Opinions*

Malcinovic argues that the ALJ failed to properly evaluate the opinions of her treating physicians, Dr. Delbridge and Dr. Bogdanic. Specifically, Malcinovic argues that the ALJ failed to properly weigh Dr. Delbridge's and Dr. Bogdanic's opinions. Malcinovic also argues that the ALJ's reasons for discounting Dr. Delbridge's and Dr. Bogdanic's opinions are not supported by substantial evidence in the record. Malcinovic concludes that this matter should be remanded for further consideration of Dr. Delbridge's and Dr. Bogdanic's opinions.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v.*

---

[13] *Id*. at 18.

*Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'*Id.*.); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may

reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

In his decision, the ALJ addressed the opinions of Dr. Delbridge as follows:

> The undersigned finds that Dr. Delbridge's opinions are consistent with the objective medical evidence. Specifically, Dr. Delbridge's opinions related to [Malcinovic's] limitations pertaining to standing and lifting coincides with the objective medical evidence as diagnostic testing showed that [Malcinovic] did have a mild disc protrusion. However, the undersigned notes that these opinions appear to be primarily related to [Malcinovic's] attempt to secure worker's compensation and is not an assessment of [her] impairments and limitations per our Rules and Regulations. For these reasons, the undersigned has assigned some weight to Dr. Delbridge's opinions.

(Administrative Record at 17.) As for Dr. Bogdanic, the ALJ addressed his opinions as follows:

> The undersigned assigns little weight to Dr. Bogdanic's opinions as they are generally not consistent with the objective medical evidence. For example, this statement is not consistent with Dr. Bogdanic's own physical examinations as he noted that [Malcinovic's] back was symmetrical; muscle bulk was normal; flexibility was normal; and gait was normal. Dr. Bogdanic offered further contradictory statements in May 2013 when he reiterated that [Malcinovic's] limitations were severe; however, he went on to indicate that "things are stable."

Moreover, in May 2013, Dr. Bogdanic provided an assessment and indicated that [Malcinovic] experienced [pain] radiating down both of her legs with any prolonged standing, which was defined as anything more than three to four minutes. Further, Dr. Bogdanic noted that [Malcinovic] was unable to tie her shoes, and sitting was somewhat uncomfortable. To the extent that this assessment consists of a functional assessment, the undersigned assigns little weight to this statement. First, it appears that this assessment is the product of [Malcinovic's] own self-reporting and does not derive from a physical examination performed by Dr. Bogdanic. Further, this assessment is inconsistent with Dr. Bogdanic's own treatment notes. For example, Dr. Bogdanic indicated that [Malcinovic's] back was symmetrical; her flexibility was normal; and her gait was normal. Additionally, Dr. Bogdanic indicated that "things are stable" and he stated that Vicodin and Flexeril provided some relief.

(Administrative Record at 17-18.)

In reviewing the ALJ's decision, the Court bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618. Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quotation omitted). Furthermore, if an ALJ rejects the opinions of a treating physician, the regulations require that the ALJ give "good reasons" for rejecting those opinions. *See* 20 C.F.R. § 404.1527(d)(2).

The Court finds the ALJ has not fully met these requirements. The Court will first address Dr. Delbridge's opinions. In his decision, the ALJ affords only "some" weight to Dr. Delbridge's opinions, even though Dr. Delbridge is a long-time treating source, and the ALJ found his opinions to be consistent with the objective medical evidence. *See Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015) (providing that a treating physician's opinion is ordinarily entitled to substantial or controlling weight if it is well supported by the objective medical evidence). The ALJ offers one reason for granting only "some"

weight to Dr. Delbridge's opinions, namely, that Dr. Delbridge's opinions were used in an attempt by Malcinovic to secure worker's compensation benefits in the past. The Court finds this sole reason for discounting Dr. Delbridge's opinions wholly inadequate. Between August 2010 and August 2011, Malcinovic met with Dr. Delbridge on multiple occasions. The record demonstrates that over this year-long period, Dr. Delbridge consistently found Malcinovic to have significant limitations with standing, lifting, and bending due to back pain. Simply because these opinions were used in a worker's compensation claim does not distract from their worth as opinions from a long-time treating source. In an attempt to support the ALJ's reasoning, the Commissioner directs the Court to three cases and one regulation. However, neither the cases, nor the regulation have anything to do with the proposition that treating source opinions used for a worker's compensation claim are somehow entitled to less weight.[14] Therefore, under such circumstances, the Court finds the ALJ's reason for discounting the opinions of Dr. Delbridge to be inadequate under the regulations. *See* 20 C.F.R. § 404.1527(d)(2) (requiring an ALJ to give "good reasons" for rejecting the opinions of a treating medical source). On remand, the ALJ must further consider weight that should be afforded Dr. Delbridge's opinions, and fully and fairly develop the record with regard to Dr. Delbridge's opinions.

Turning to the opinions of Dr. Bogdanic, the Court finds that the ALJ's consideration of Dr. Bogdanic's opinions is a much closer issue. The ALJ provides two reasons for affording Dr. Bogdanic's opinions "little" weight. First, the ALJ asserts that

---

[14] *See Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) (discussing the effect of unemployment benefits on a credibility determination); *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (discussing weight afforded to a chiropractor, a non-acceptable medical source); *Timmerman v. Weinberger*, 510 F.2d 439, 444 (8th Cir. 1975) (discussing payments to a claimant from a worker's compensation insurance company); 20 C.F.R. § 404.1504 (discussing consideration by the Social Security Administration of a disability opinion from another agency).

Dr. Bogdanic's opinions are inconsistent with his own treatment notes. Second, the ALJ maintains that Dr. Bogdanic's opinions should be discounted because he overly relied on Malcinovic's self-reports of pain. While the ALJ correctly points out that on routine examinations, Dr. Bogdanic consistently found Malcinovic's back to be symmetrical, with normal flexibility and gait, the ALJ ignores that Dr. Bogdanic also consistently found that Malcinovic had "severe" limitations in activities, including limitations with standing, bending, and sitting. The Court finds it significant that such limitations are consistent with Dr. Delbridge's opinions, which the ALJ determined were entitled to "some" weight. Moreover, the Court is unpersuaded that Dr. Bogdanic's reliance on Malcinovic's self-reporting is a "good" reason for rejecting Dr. Bogdanic's opinions. "A patient's report of complaints, or history, is an essential diagnostic tool" for any doctor when he or she is offering a medical opinion or diagnosis. *Flanery v. Chater*, 112 F.3d 346, 350 (8th Cir. 1997); *see also Brand v. Secretary of Dept. of Health, Ed. and Welfare*, 623 F.2d 523, 526 (8th Cir. 1980) ("Any medical diagnosis must necessarily rely upon the patient's history and subjective complaints."). Under the circumstances, including the Court's determination that this matter should be remanded for further consideration of whether Dr. Delbridge's opinions are entitled to more than "some" weight, the Court believes that on remand, the ALJ should also further consider and develop the opinions of Dr. Bogdanic.

In summary, having reviewed the entire record, the Court concludes the ALJ failed to give "good reasons" for rejecting the opinions of Dr. Delbridge and Dr. Bogdanic. *See Tilley*, 580 F.3d at 680 ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion."). The Court further finds that the ALJ failed in his duty to fully and fairly develop the record with regard to Dr. Delbridge's and Dr. Bogdanic's opinions. Accordingly, the Court determines that this matter should be remanded for further consideration of the treating source opinions. On remand, the ALJ shall provide clear reasons for accepting or rejecting the opinions of

Dr. Delbridge and Dr. Bogdanic, including an explanation of the weight afforded their opinions. The ALJ must support his reasons with evidence from the record.

### 3. *Hypothetical Question*

Malcinovic argues that the ALJ's hypothetical question to the vocational expert was incomplete because it did not properly account for all of her impairments. Malcinovic also argues that the ALJ's hypothetical was incomplete and did not contemplate all of her functional limitations. Malcinovic maintains that this matter should be remanded so that the ALJ may provide the vocational expert with a proper and complete hypothetical question.

Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

In section *IV.B.1* and *IV.B.2* of this decision, the Court remanded this matter for further consideration of Malcinovic's subjective allegations of pain and disability, and further consideration of Dr. Delbridge's and Dr. Bogdanic's opinions. Accordingly, the Court determines that on remand, the ALJ should also reconsider the hypothetical question posed to the vocational expert to make sure that it captures the concrete consequences of Malcinovic's limitations based on the medical evidence as a whole, including the opinions of Dr. Delbridge and Dr. Bogdanic, and Malcinovic's own subjective allegations of pain and disability. *See Hunt*, 250 F.3d at 625.

## C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to: (1) make a proper credibility determination in this matter; (2) fully and fairly develop the record with regard to the opinions of Dr. Delbridge and Dr. Bogdanic; and (3) provide the vocational expert with a hypothetical question that captured the concrete consequences of Malcinovic's limitations based on the medical evidence as a whole. Accordingly, the Court finds that remand is appropriate.

## V. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must consider all of the evidence relating to Malcinovic's subjective allegations of pain and disability, address his reasons for crediting

or discrediting those allegations, and properly apply the *Polaski* factors when determining Malcinovic's credibility. The ALJ shall also provide clear reasons for accepting or rejecting Dr. Delbridge's and Dr. Bogdanic's opinions and support his reasons with evidence from the record. Lastly, the ALJ shall also provide the vocational expert with a hypothetical question that captures the concrete consequences of Malcinovic's limitations based on the medical evidence as a whole.

## VI. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this 23rd day of June, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA